JOHN SCHICK AND TOWN OF ROCKINGHAM, Appellees, v. WEST
DAVENPORT IMPROVEMENT COMPANY AND DAVENPORT ICE
& COLD STORAGE COMPANY, Appellants.

**Real property:** STREETS: SALE: COMMON LAW DEDICATION: ESTOP-
PEL. Where a sale of real estate is made with respect to an exhibited
plat showing an adjoining street or reservation for other purposes,
the purchaser, independent of any public right, relying on such plat
or reservation, has in equity all rights thus believed to be conveyed,
and the grantor would be estopped to deny the same. Under such
circumstances statutory dedication is unnecessary.

**Same:** COMMON LAW DEDICATION: EVIDENCE. A common law dedica-
tion of a street or road may be revoked by the owner before public
acceptance, unless private rights have intervened. In the instant
case the evidence is reviewed and held to show that the private rights
acquired in the street in question would prevent the alleged owners
from closing the same.

**Same:** CONTRACT OF SALE: RESERVATION: EVIDENCE. In an action to
prevent the closing of a street upon the ground of a common law
dedication and acceptance, the evidence as to whether plaintiff knew
that the strip in question was reserved before the deed was delivered
is in dispute; but as he purchased under a contract, without knowl-
edge of any reservation, and as the deed made no reservation lessen-
ing its legal effect, plaintiff cannot be bound by knowledge acquired
after the making of the contract. Evidence held to support a decree
forbidding the closing of the claimed street in question.

**Same:** ESTOPPEL. One purchasing and accepting a conveyance of land
with knowledge of facts sufficient to put him on inquiry as to the
claimed rights of others to use the same for street purposes is bound
thereby; especially where it appeared that the express purpose of
the purchase was to cut off the use of the same for street purposes.

**Same:** JUDGMENT: CONCLUSIVENESS: MODIFICATION. The finding and
decree that a strip of land was set apart for railway purposes was

in effect a finding that it was not a highway, which was binding upon plaintiff when not appealed from; and in so far as the decree restraining the closing of the highway and interference with plaintiff's right of access thereto included the strip in question it was not within the issues and is modified to that extent.

*Appeal from Scott District Court.*—HON. WILLIAM THEOPHILUS, Judge.

MONDAY, FEBRUARY 23, 1914.

PROCEEDING in equity to restrain the closing of a public street, and interference with plaintiffs' right of access and use. From a decree in favor of plaintiffs, defendants appeal.—*Affirmed.*

*Cook & Balluff, J. C. Hall,* and *A. G. Sampson,* for appellants.

*William Hoersch* and *W. M. Chamberlin,* for appellees.

WITHROW, J.—I. In 1896 the West Davenport Improvement Company purchased real property near the city of Davenport, and adjacent to the village of Rockingham, platted it, and placed it on sale. The property was close to the tracks of the Rock Island Railway, and it was the expectation of the officers of the improvement company that the platted acreage would be desirable for and could be largely disposed of as sites for manufactories. In 1902 there was sold by the improvement association to the Milwaukee Railroad Company a wedge-shaped tract immediately adjacent on one side to the Rock Island right of way and on the other to the strip of land in controversy, which is sixty feet in width, and lies immediately fronting certain of the platted property between it and the railroad property, and extending from the town of Rockingham, which was later incorporated, in a northeasterly direction

to what will be called the Kuhn tract, where it ended. The property sold to the Milwaukee road extended northeasterly to a point in front of what is designated as lot 6 on the platted land; that being the apex of the triangle. From this platted land, sales were from time to time made to different persons, and finally in 1911 the remainder was sold to the Davenport Ice Company, appellant, the conveyance being by metes and bounds, and covering about sixty-one acres. This transaction was completed in October, 1911. In 1907 the improvement company had conveyed a part of the property to one Frank, and in September, 1911, he conveyed it to the ice company. In 1906 the improvement association conveyed to Jacob Schmidt, by particular description, that which was designated as lot 3 on the plat of the land, and this, on September 2, 1911, was conveyed by Schmidt to Schick. June 22, 1905, the improvement company conveyed to Mary A. Emerson a part of the land by particular description, and in 1909 this tract was conveyed by the Emersons to Schick. The tract thus conveyed was designated on the plat as lot 11, containing five and thirty-four one-hundredths acres. In September, 1911, the improvement association conveyed to Schick lots 4, 5, 6, 13, 14, 15, 16, 17, and 18. They were so designated in the contract of sale; but in the conveyance subsequently made the description was by metes and bounds. Upon its purchase of the remainder of the tract by the Davenport Ice Company, some question arose as to whether the improvement company, because of sales to other parties, had the right to convey to it the sixty-foot strip; but after some hesitancy, in which one of the officers of the association stated that, while there was perhaps no legal obstacle to its sale, there was a moral obligation to at least some who had previously purchased, it was conveyed to the ice company. Upon completing its purchase, the ice company began to exercise exclusive control of the property covered by its conveyance, included in which was a portion of it conveyed to it .

by Frank in 1911, whose purchase from the improvement company, as we have stated, had been in 1907.

The petition of plaintiff, the appellee, alleges his ownership of the lots purchased by him from the improvement association, and that he purchased the same according to plats exhibited with his petition, which showed, as he claims, that there was a street sixty feet in width running from the Mississippi river northwesterly along the southwesterly sides of lots 13, 14, 15, 16, 17, 18, and 19, and also a street of the same width running northeasterly along the west lines of lots 6, 7, and 19; the latter being a part of the sixty-foot strip to which we have already referred. He claims that such were dedicated for street purposes, and also that the improvement company so represented by its officers, and that it was a part of the agreement of purchase that they should remain streets. He also alleges that the improvement company platted the town of New Rockingham, and that the strip was shown thereon as a continuation of a street in said town. He alleges that the purchase by the ice company of that claimed as a street with knowledge of the fact that such was intended to be used as a street, that a part of its purchase was from Frank, whose deed from the improvement association had attached to it a plat similar to that relied upon by Schick, which plat was duly recorded with the deed. He pleads that by reason of such facts the ice company and its grantor, the improvement association, are estopped from claiming ownership in such streets. The town of New Rockingham intervened, claiming that the defendants were about to appropriate, or had appropriated, to their own use certain streets within its corporate limits, being the streets described in the petition of plaintiff, and asks that they be restrained from so doing.

The appellees admit the purchase by Schick, but deny that it was with reference to the plat exhibited by him, and deny that the ground in dispute was ever dedicated to street purposes, or intended to be so used; deny that Schick was so informed. The sale to the ice company is admitted; but it is

denied that the conveyance to Frank was based upon a plat similar to plaintiffs' Exhibit A. They deny that any of the land became streets or roads by reason of the plat of the town of New Rockingham, and allege that they were never so treated or regarded by the officers of the town.

The improvement company, in its separate answer, avers that in purchasing the property Schick had actual knowledge that the sixty-foot strip lying adjacent to the right of way of the Milwaukee railroad was not a street, but that it had been reserved for railroad purposes, that he had such knowledge before receiving his deed from the improvement company, at a time when he had the right to refuse to pay the purchase price, and that, if the contract of purchase was made through any misapprehension or mistake as to the streets, the improvement company offered to release him from any obligation to take the land.

The ice company denies that it had notice, prior to its purchase, that there were any streets, roads, or highways on the land purchased by it.

The trial court found and decreed that Schick purchased certain property in said tract from Emerson, and that at the time Emerson purchased plats were shown upon which the sale was based, and that Schick has the rights acquired by Emerson. It also found that the strip of land sixty feet in width along the right of way to a point designated as Miller street had at times been used as a public highway, and that beyond that, and parallel with the right of way to the Kuhn tract to the north, the strip in controversy had been reserved as public grounds for railroad purposes to Schick and others who purchased lots from the plat made by the improvement company. It found that no road had ever been used or laid out on the southerly side of the lots last purchased by Schick, and denied relief as to such. It decreed that the sixty-foot strip on the east line of the railroad right of way, extending from New Rockingham to Miller street, is a public highway, and shall be kept open for public travel, and that the strip from Miller street to the Kuhn

tract was set apart for railroad purposes, and that it should be kept open for use by Schick, to reach the railroad from his property, and for the purpose of laying upon it side tracks to his premises. From this decree, the defendants appeal. Schick does not appeal from that part of it which denies his claim to a road on the southerly side of lots 13 to 18, inclusive.

II. A fuller understanding of the situation will be had from a plat of the premises. For convenience, from the many which were introduced in evidence, we use that upon which appellee Schick claims to have relied, without at the moment giving to it all that is claimed for it by him.

EXHIBIT A.

That which on the plat is designated as a street, running from the road along the river to a connection with the strip along the right of way, is Miller street. As will be observed, the property purchased by Schick from Emerson, lot 11, lies upon Miller street, as does lot 3, being that which was purchased from Schmidt, and also lots 4, 5, and 6, included in his last purchase. As will also be noted from the plat, the strip in dispute is designated as a street. While there is some dispute in the evidence as to the identity of this plat with that furnished to Schick by the improvement company at the time of his purchase from it, we are satisfied that such has been shown, either as the original, or an exact copy of it. In Exhibit B attached to the petition the strip lying above Miller street and extending to the Kuhn tract is designated as a strip for railroad purposes, while that below is without designation, but merely as being of the width of sixty feet. It may be open to question, however, whether the designation as made on the plat was intended to apply to the entire length, or only to that part upon which the lettering appears. On another plat made by the company, and on which is designated by red lines as "land sold Emerson and Miller, 1905," the strip is designated as "60 feet road reserved;" on many others it is marked as a street. In one the acreage of the larger part of the tract is inclosed within red lines, but between the westerly line and the railroad right of way is designated as a "strip." In the recorded plat of the town of Rockingham the land in question appears as the continuation of a road which runs by the town. This, however, is claimed to be a plat which was not made under the direction of the improvement company, and is not controlling in the case.

It is the claim of the improvement company that it never was intended by it that the strip was to be dedicated as a public road or street, but that the sole purpose in reserving it from sale was to make more valuable the remaining lands for factory sites by affording means by which purchasers

might have trackage facilities to reach the railroad nearby. It also is claimed, and there is evidence tending to show, that it never was in fact used as a public highway, was never so treated by the public or by the officers of the town of New Rockingham, over a part of which they would have control, but that it was used to some extent by adjacent owners or tenants for agricultural and other private purposes. On the other hand, there was evidence supporting the claim that its use as a public road was asserted. This claim of fact, however, is not wholly conclusive as to the rights of the parties.

While the appellant introduced evidence to show that the improvement company never had the intent that the strip was to be dedicated or considered as a street, it is not seriously claimed that, if sales were made to persons, based upon a plat showing it to be a street or a road reserved, or reserved for railroad purposes, the purchaser independent of any public rights, if relying upon the plats, would have in equity all rights thus believed to be conveyed, and that the grantors could not be heard to speak to the contrary. Such would in effect be a representation as to rights conveyed and reserved under the conveyance which would estop the grantor from denying it. Even though there be no statutory dedication of the street, if sales are made with reference to it, there is that which creates a dedication in fact. In all conveyances made from this tract, excepting the last one to the ice company, the descriptions, where the property sold bounded upon the strip in question, ran certain fixed distances, which were limited by the stakes or posts which marked the easterly line of the strip; and while there may not have been in the conveyances the designation of the strip as a street or a road, or as reserved for road purposes, if such was made to appear by an exhibit plat which was relied upon, it would enter into the transaction as an inducing cause. *Talbert v. Mason,* 136 Iowa, 373; *Hunter v. City of Des Moines,* 144 Iowa, 541; *Fox v. Union Sugar Refinery,* 109 Mass. 292.

1. REAL PROPERTY: streets: sale: common law dedication: estoppel.

The *Talbert* case, *supra,* considers fully this question alike in its relation to cases where the conveyance refers to a road and to cases' such as are here presented.

We do not understand this rule to be questioned by the appellants; but they cite authorities upon the proposition that a common-law dedication may be revoked by the owner, before

2. Same: common law dedication: evidence.

public acceptance, unless private rights have intervened. As to this being a correct statement of the law, we think there is no question.

Whether it is applicable to the present case depends upon its facts.

From a careful study of the large record presented in this case, we are satisfied that in the sale to Emerson by the improvement company the plat entered into the transaction, and that whatever rights were acquired thereunder passed to Schick. The least that can be claimed for it is that the plat designated the strip as reserved for railroad purposes; but in a later plat made by the improvement company, which marked the Emerson and Miller purchases, the strip was designated as a road. This would not be competent as showing an inducement or representation, but has bearing as evidence of the intent of the grantors in making those conveyances.

It also appears in the record that conveyances of lands within the platted portion were made by the improvement company to others. To one Stollenberg a sale was made based upon a plat which showed the strip as a street. A lease was made to a Mrs. Huppert, and she testified that it was represented to her by an officer of the improvement company that it was a street; but this is denied in the evidence.

As to the conveyance to Frank under which the ice company holds a part of its property, being lots 7, 8, and 19, that witness testified that at the time of his purchase he did not know that there was a road there, but that he was told it was a strip reserved for the purpose of anybody who would buy land there, or who started a factory, to have the use of it between them and the railroad track. In cross-examination

he stated that he did not understand it to be a street "in that sense of the word." He also testified that about a week or ten days before he sold to the ice company he had a conversation with Schick, who wished to trade the north half of lot 18 for the south half of lot 19, stating that he wanted to get in there to the railroad. Much of the force of this latter testimony is lost when it is remembered that, if the claim of the defendants is correct, even such ownership would not have given Schick the desired access, as there would yet be an intervening strip which would not be his, or over which he would have no right to pass.

It is clearly shown to have been the purpose of the ice company, whose business was indicated by its name, to so foreclose the situation as to prevent Schick from using his property in the same business, it being his known intention so to do, and that the subsequent transaction between the ice company and the improvement company as to the disputed strip was for that purpose alone; and we are of opinion from all of the evidence that had it not so done it would have had equal but not exclusive means of access to the railroad for shipping purposes.

The improvement company also caused to be platted the town of New Rockingham, which laid easterly from a part of the tract before sold to the Milwaukee Railroad Company, such plat having been recorded, and on which that part of this strip between the lots of the town and the railroad land is designated as Railroad street, and continues beyond the limits of the town plat. While it is not claimed in this case that any private rights have arisen in favor of purchasers of lots in the New Rockingham plat, we think that this taken together with the other facts to which we have referred was ample basis for the conclusion reached by the trial court as to the character of the strip and the rights which purchasers had in it.

III. Upon the question of appellee's knowledge that the strip was not reserved of which, it is charged, he was informed

before the deed was delivered, but after his contract for the

**3. SAME:** purchase was made, the evidence is in sharp
**contract of** contradiction, and we think the defendant did
**sale: reserva-**
**tion: evidence.** not meet its burden of proof. But, without
regard to that, he took under his contract insisting upon its
fulfillment, and the deed subsequently made contained no res-
ervation which lessened its legal effect.

IV. It is further urged by the appellants that the decree
of the trial court is wrong, for that there was no showing in
the evidence which warranted the holding that the strip from
the northerly boundary of New Rockingham to the southerly
line of the acre lots was ever shown on any plat published or
distributed by the authority of the appellant, and that in hold-
ing that part of it to be a public street or highway there was
error. Such was a necessary southerly connection to make
available for public purposes, or the purpose of travel by
Schick, that which immediately fronted this platted tract; and,
without in more detail referring to the evidence, we are of the
conclusion that the decree in that respect was warranted by
the evidence, and this also applies to its findings and order as
to the balance of the strip.

V. As to the claim of the ice company that it purchased
without notice of the existence of any streets or rights of
owners over the strip, we think it clearly appears that before

**4. SAME:** it took conveyance of the strip the question
**estoppel.** was considered, and that it had knowledge
sufficient to put it upon inquiry as to the actual situation;
but beyond this was its purpose clearly shown by the evidence
to acquire the strip, and thereby cut off from Schick his means
of access to the tracks, carrying with it the knowledge that he
claimed such right in and on the land.

The decree of the trial court is—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.

SUPPLEMENTAL OPINION. SATURDAY, NOVEMBER 21, 1914.

PER CURIAM.   In the decree of the trial court it was held that the strip of land running north to the Kuhn tract from the north line of the intersection of Miller street with the land decreed by it to be a street was set apart for railroad purposes and reserved to that use for the owners of lots in the platted part of the land, and that it should be kept open for the use of Schick to reach the railroad from his property, and for the purpose of laying on its side tracks to his premises.

In appellant's petition for rehearing attention is particularly called to the fact that neither in his petition nor its amendments, did the plaintiff make claim of rights other than to land dedicated as a street or a public highway, running northeasterly along the west line of lots 6, 7, and 19.   The strip of land held by the trial court to have been set apart for railroad purposes ran in a northerly direction from the platted lots, and from the northwest corner of lot 6, was not claimed to have been dedicated for highway purposes.   The finding and decree of the trial court that the strip of land was set apart for railroad purposes was in effect a holding that it was not a highway, and, not having been appealed from, now stands as conclusive upon that question.   It follows that in this respect the decree was too broad, in that it granted to Schick rights not claimed by him in his petition; for it cannot be claimed that the designation of land as for railroad purposes constituted it a public highway by dedication or representation, and such was the only right asserted by plaintiff.

5. SAME: judgment: conclusiveness: modification.

The decree of the trial court should therefore be modified, so as to omit from its mandatory holding that part which, after finding the strip to have been reserved for railroad purposes, holds the right to such use to be in John Schick and others, and commands it to be kept open for such use.   The case is remanded for decree in conformity with this conclusion. The petition for rehearing is overruled.

*Modified* and *Affirmed.*