JOHN SCHICK et al., Appellees, v. WEST DAVENPORT IMPROVE-
MENT COMPANY et al., Appellants.

**HIGHWAYS:** Prescription—Public Ownership of Land. Evidence
1   reviewed, and held sufficient to sustain a finding that land either
was a part of highway, having been acquired by prescription,
or was owned by the public, as being below the high-water mark
of a navigable river.

**DEDICATION:** Nature and Requisites—Evidence—Estoppel—Buy-
2   er's Reliance on Plats. Evidence reviewed, and held sufficient
to sustain a finding that defendants had dedicated their rights,
if any, to the public.

*Appeal from Scott District Court.*—F. D. LETTS, Judge.

MAY 8, 1919.

ACTION in equity to enjoin defendants from interfering
with or obstructing the public use of a strip of land about
one mile long, along the Mississippi River, at the point
where the parties own property, and from using said strip
for private and pecuniary profit, and from consummating a
contemplated sale of the property; and for general equitable
relief. The facts are more fully stated in the opinion. After
a full trial on the merits, the trial court entered a decree for
plaintiffs, from which defendants appeal.—*Affirmed.*

*Cook & Balluff, J. C. Hall,* and *A. G. Sampson,* for ap-
pellants.

*William Hoersch* and *W. M. Chamberlain,* for appellees.

PRESTON, J.—Appellants contend that the real issue in
the case is that they claim the strip of ground lying between
the river and the public highway, known as the River Road,
which appellees claim is a part of the road. It appears that,
the appellant West Davenport Improvement Company,
which, for convenience, we shall hereafter refer to as the

Improvement Company, having-made a contract to sell the ground in controversy to the defendant Davenport Ice and Cold Storage Company, which will be referred to as the Ice Company, the plaintiffs brought this suit to enjoin the consummation of said contemplated sale, and to enjoin defendants from exercising the rights of ownership, or interfering with the public use of the same. The town of Rockingham will be referred to as "the town."

Plaintiffs, in the petition, particularly describe the strip in question, which description will not be now given, except to say that it commences at a certain point, thence eastwardly to the Mississippi River, then northerly along the meanders of said river to a point directly east of the intersection of the easterly line of the River Road to the railway; thence west to said intersection; thence southerly along the easterly line of the River Road to the beginning. Plaintiff Schick is an abutting property owner on the westerly side of the highway or street known as the River Road, along the westerly side of the strip in question. Plaintiff Schick purchased the real estate, or a part of it, now owned by him, from one Emerson, who, in turn, purchased from the Improvement Company, at which time, plaintiff alleges, certain plats were given, and shown to him, showing that the real estate first described had already been dedicated to the public as a portion of the River Road. He alleges, also, that the officers of the Improvement Company told him that there would be no private rights given to anyone in the real estate in question. It is also alleged by plaintiff that Schick purchased certain real estate from the Improvement Company, known as Lots 13, 14, 15, 16, 17, and 18, and Lots 4, 5, and 6, at which time the Improvement Company, by its officers, showed him a plat of the real estate; that on said plat, the real estate which defendant Improvement Company is about to convey, is shown as already dedicated to the public, and as being a part of the River Road; that said plaintiff bought

according to said plat, and depending upon said plat, when the purchase was made, and bought with the understanding that the strip of ground in question belonged to the public; that the Improvement Company has already conveyed to the United States of America, for the use of the public, the real estate, or a large portion thereof, which the Improvement Company is about to convey, as aforesaid; and that the same is now public property. This is one of the circumstances relied upon by plaintiffs to sustain their claim that there was a dedication for public use by the Improvement Company. It is further alleged by plaintiff that the real estate first described is below the high-water mark of the Mississippi River, and already a part of the public domain of the state of Iowa and of the town; that, if the Improvement Company conveys such real estate, it will divest the rights of the public therein, and will be an irreparable injury to the plaintiffs and the public; that defendants propose to prevent plaintiff Schick and the public generally from going to and from said River Road; that defendant and its officers have planned together especially to keep said Schick from going into the ice business and procuring ice during the winter season from the Government Harbor, and that, unless restrained, defendants will place obstructions upon said public property and attempt to exercise private ownership thereof, preventing plaintiffs and the public generally from exercising their legal rights in and to said harbor and public property. The answer admits that the Improvement Company has agreed to sell the real estate first described; admits that Schick purchased certain real estate from the Improvement Company, as alleged, and that said defendant showed to said Schick a plat of said real estate, but denies the other allegations in regard to the plat, and denies other allegations of the petition. By amendment to the answer, they especially deny that they have planned to keep Schick from going into the ice business and procuring ice from the

harbor; deny that they will place any obstructions on any public property; admit that the Improvement Company exercises private ownership over said strip, and that, if the sale thereof is consummated to the Ice Company, the Ice Company will exercise private ownership over the strip; deny that they will attempt to exercise ownership over any public property, or that they will attempt to prevent plaintiffs and the public from exercising their legal rights as to any public property. The decree, entered January 10, 1916, finds that the real estate in controversy is not the property of the defendants; that the road bounding said alleged real estate is a public highway, acquired by the public by use and prescription; that the boundary line of said highway nearest to the Mississippi River has never been fixed by survey or written record; but that said highway called the River Road was originally placed and used as close to said river as the nature of surface of the land permitted; that the land lying between said highway and said river is below high-water mark, and belongs to the public; that the defendants had never used the same for any beneficial purposes inconsistent with the said public use; that upon plats executed by defendant Improvement Company and exhibited to plaintiff and his grantor, there was no land shown to exist between the river and said highway; and that defendants have dedicated their rights, if any, in said land to the public, by reason of said plats' being depended upon by the plaintiff Schick and his grantor; and that all the land from the fence and westerly line of said road to the river is public ground, in which the public have the beneficial use; that there is no private ownership in said land; that the same either belongs to the public highway or is below the high-water mark of the river, and is owned by the public.

It seems that the rights of the parties in regard to these matters have been in litigation for years, in one form or another. Matters pertaining thereto have been twice before

this court. This action was begun in January, 1912. The other cases reached this court after that date, and one of them before the decree was entered in this case. There is no claim of adjudication, however. The first case is entitled as is this, and is reported in 167 Iowa 294. The other case is entitled *West Davenport Imp. Co. v. Theophilus,* 177 Iowa 353. In the first case, a plat is set out, showing the lots which are a part of the property of plaintiff Schick, the river, the road, and the strip of ground. This may not be accurate, as applied to the contentions of the parties in this case, but it gives a general idea of the situation, and we refer to it, rather than take the time in attempting to give long descriptions, or setting out a new plat. The plaintiff Schick, in this case, still contends, as he did in the other cases, as he now states it, that the idea that there were private property rights between the River Road and river was born of the greed of the Improvement Company and the desire on the part of the Ice Company to keep him out of the ice business; and that the Ice Company is not now in a position to argue that it is an innocent purchaser, or that the Improvement Company is a vendor in good faith. Appellees concede in argument that the Improvement Company is interested only in the amount of the consideration, $1,500, which they were to receive from the Ice Company for the strip in question, and they argue from this that the Ice Company is the real defendant; and appellees urge that the decree establishes the fact that the land between the west line of the highway and the river belongs to the public, and that appellants are only restrained from carrying out their threats to exercise private ownership over it; that, if appellants lose this law suit, they lose nothing which should be of value to them, because they still have the right to use the property in common with the public; that, if they succeed, they will bar Schick and the public from access to the river. The Improvement Company obtained title to a tract of land in 1896, by deed from one Murphy,

without warranty, which purports to convey all the land to the river, and including the road in question, although no reference to the road is made in the deed. As we understand it, Mr. Murphy was, at that time, an officer in the Improvement Company. He testifies that he has been secretary and treasurer of the Improvement Company ever since it was organized, in May, 1896. Defendants admit that this was subject to the burden of the easement, as they put it, of the public highway known as the River Road. Appellees think it is more than an easement, because the road or street at the point in controversy is within the limits of the town, and they contend that the fee to the street is in the town. This and several other points are suggested in argument, but we shall not go into a detailed discussion of all of them, because appellants say that the two propositions which we shall refer to in a moment fairly present everything that is in dispute in this case. Appellees contend that they have shown that the road in question was used and worked, and because thereof, they have shown there was a road by prescription, which extended to the river, and that, therefore, there is no land east of the highway or street to which defendants have any claim. But they say, too, and seem to rely most strongly upon the proposition, that there was a dedication to public use by the Improvement Company, of all such land, if there is any there. The defendants are claiming title to the land, but plaintiffs are only claiming, for themselves and the public in general, the right to use it as public property. Under these circumstances, the propositions for consideration are narrowed somewhat. There seems to be little, if any, dispute between counsel as to the law of the case, so that it is almost altogether a question of fact. Appellants concede that the trial court was right in finding that there was a road at the point in question by prescription, but claim that there was no dedication.

1.   Appellants say that, because of the conveyance by

Murphy to the Improvement Company, and their concession that the conveyance was subject to the rights of the public in the road or street, the first question is the width or extent of the River Road. They dispute plaintiffs' claim that the prescriptive right extends to the river, and that, there-fore, there was no land of the Improvement Company. De-fendants sought to show that there was land east of the road and between it and the river, by two methods: First, that the road had been used and worked in such a way as that the prescriptive right of the public was to a road narrower than as contended by plaintiffs, defendants contending that the road was about 20 feet wide, before it was widened by secur-ing additional ground; and second, that, considering the evidence as to the growth of vegetation along the water's edge, under the rule for determining high-water mark, the trial court should have found the high-water mark to have been lower, and farther east, thus leaving more land ex-posed east of the road. One of the plats seems to represent the water line at a river stage of 9 feet 4 inches above low-water mark, and that the water's edge is 52 feet from the fence, at the narrowest point, and varies from that distance to 90 feet from the fence on the west side of the highway,—at least, this is appellants' contention. It should have been said that there is no fence on the east. True, there is evi-dence, as contended by appellants, that there is hardwood timber growing on the bank, which is submerged by a 9-foot stage; but a 9-foot stage does not remain in the river enough days in each year to prevent hardwood timber from growing at points below where the 9-foot stage reaches it. There is evidence, also, that there are places where hardwood timber grows below the 9-foot level; that a 6-foot stage, and even lower, does not exist long enough to damage timber not above a 6-foot stage. But there is evidence of a witness that the highest stage in that locality is about 19 feet; and that

1. **HIGHWAYS:** prescription: public owner-ship of land.

9 or 10 feet is a pretty good high-water stage; and that the timber which grows at the lower stage is the kind that can stand the water,—but not fruit trees. Another witness says he never found many elm, maple, and large trees that grew on the land that was submerged in the 9-foot stage. It was stipulated at the trial that the stage of the river, as shown at the government bridge, is 7.50 feet; and that, in 1892, the Mississippi River reached a stage of 15.10 above low-water mark; and that is the highest stage ever reached by the river at the bridge since the government signal service was established. There is evidence that the road in question has always been a public highway, used by the public for 45 years or more; that the road itself was formerly under water each year, but in recent years, that part of the road within the town has been filled up. There is evidence that the town authorities claimed a 60-foot road. The testimony is quite voluminous on these propositions as to the width of the road, and whether there is or is not any land east of it. Evidence goes back to 1857, in regard to attempts to establish a road and abandonment thereof, and resurveys, evidence of surveyors, vegetation on the river bank, the growth of crops and timber, the use of the road, and other matters. It would serve no useful purpose to go into the evidence in detail, and would unduly extend the opinion. Some of the evidence will be referred to later. After examining the record, we are satisfied with the findings of the trial court, and conclude for ourselves that such findings are sustained by the evidence.

    2. Appellants state their second proposition substantially thus: If it has not been shown that the easterly boundary of the River Road is ordinary high-water mark, the next question is whether the Improvement Company ever parted with the rights it acquired by the Murphy deed: that is, as we understand them, whether there has been a dedication. This, too, is largely a question of fact. Plaintiff Schick testified that he bought

2. DEDICATION: nature and requisites: evidence: estoppel: buyer's reliance on plats.

the property from the Improvement Company so that he could have access to the river; that the town exercised ownership over parts of land between the fence and river, which were not a part of the worn and traveled road; that, before the suit was started, the Improvement Company said they were going to sell the river front; that he bought the property to go into the ice business; and that he so testified before the officers of the Ice Company, in the former trial of this case; that it is a good place to cut ice there, because there is still water; that the mayor of the town went to the Ice Company, or some of its officers, in regard to some sheds which were being constructed along the river bank; that he was present. Another witness testifies to his having a factory or building on the east side of the traveled road; that he got permission from the mayor, who said that, if there was any objection, witness would have to move it, which he promised to do; that he got no permission from either of defendants; that they never notified him to get off; that they never objected to his being there; that this was two years before the trial of this case, which began in June, 1915. The same witness says that he was interested in the Ice Company in 1903, and represented that company in regard to building a chute across the road in question for icehouses, and got the con- sent from the board of supervisors to build the chute across the road; that, when he and Albrecht went to the board of supervisors, they were told by the board to span the 60-foot road with a 40-foot opening,—to leave it so there would be a passage in front of the piers, and put it about the center of the 40-foot opening; that he made a sketch, as directed, and they said to go ahead with it. He also testified as to the town's exercising further acts of ownership over the prop- erty in regard to an ice shed on the river side, near the chute, and that permission was obtained from the town to erect the shed; that he went with the mayor when they started to build the shed, and that the witness was constable and mar-

shal of the town at the time; that they asked the man, who was building it what it was built for, and received the answer that it was for just a little time in the summer; and that the mayor told him not to rent it,—if he did, he would have to move it off, as it was on their road; and that the man, Buckingham, who was in the employ of the Ice Company, agreed to do it; that this was in this 60-foot strip, which the town claimed as a 60-foot road.

Another witness says there had been several boathouses along there, and that he had a talk with Mr. Baker, president of the Improvement Company, or some member of the company, before they macadamized the streets of the town, to get some rock that projected out at a point; that they said it was being held for the benefit of the public; that the rock was lying right at the water's edge, where the road was narrow, between the road and the river; that they wanted to take it out while the river was low. Witness Kimball, a surveyor, testifying for defendants, testifies that he made nearly all the plats that have been used in reference to laying out this property and selling it; made the plat that is designated as New Rockingham Plat, for defendants; can't remember when; all of the plat known as New Rockingham is shown on Exhibit C; doesn't remember whether, in that plat, the River Road is shown as a street; doesn't know the width of the River Road in front of the platted part of New Rockingham; the line of the River Road farthest from the river couldn't be located except by the fence lines on the ground; doesn't know whether that is platted now, and shown to be all road from the fence on the side farthest from the river, down to the river; doesn't know how wide it is; is not prepared to say how wide the River Road is at that point.

"Am not prepared to say how wide it is at any point as shown in this exhibit; am unable to state how wide the River Road is where it crosses the railroad track. The road

north from the railroad, as I remember it, as platted through there, is 60 feet,—that is merely my recollection. Think the two lines I have drawn across the railroad track, if measured by square on my map, would show a 60-foot road."

The evidence of plaintiff is that one of the plats which were exhibited to him by defendants, and on which he relied, showed no land between the road and the river. Mr. Baker, civil engineer, and member of the Improvement Company, was asked:

"Q. What you intend to convey is something between the river,—something that lies between the river and the road? A. That is, whatever the road may be, certainly, without specifying any width, that is true. I do not accurately know where that road is located. I do not know the width of it. In general terms, I would say the road ran parallel to the river: that is the best description I can give now."

The Improvement Company sent the following communication to the board of supervisors:

"Davenport, Iowa, July 26, 1907.

"To the Hon. Board of Supervisors, Scott County, Iowa:

"Gentlemen: We are advised that you propose building a permanent roadway along the Mississippi River from the old town of Rockingham north to the crossing of the C., R. I. & P. Ry. If it will aid you in doing so and you require additional ground from which to borrow earth to form the base in the building of such highway, we shall be pleased to donate strips of ground running from five to ten feet in width, parallel to and adjacent to the present highway, at points where it is necessary to so widen the highway, provided you will remove the fence and replace same on the new line. This is in accordance with conversation with your Mr. Dutcher.

"Yours very truly,

"West Davenport Improvement Co.

"By George T. Baker, President."

The proposition was accepted by the board, August 6, 1907. Appellees attach significance to the sentence near the end, in regard to removing the fence and replacing it on the new line; and they say that, as there never was any fence between the traveled road and the river, the letter is an admission that there is no land there belonging to the Improvement Company, suitable to make a road out of, or with. It might tend to show that the Improvement Company was then making some claim to the property. The testimony of Mr. Dutcher is that the strip for widening the road was on the west side of the road, away from the river, and that the reason for buying that strip was that, on top of the bank to the fence, it was narrow,—at one place, about 20 feet, and they bought it, not only to widen the street, but to carry it toward the icehouse and the other way, and to get it above a certain height; that he consulted Mr. Baker about it; that the Improvement Company donated a strip about 10 feet wide, and afterwards a little more, which was used to raise the road, so it would be as high as the ordinary high water; that they were going to macadamize the road there, and wanted to make it so that they could use it at almost all ordinary times; that, almost every year, some parts of the road, the low places, were under water; that they got a 10-foot strip from other owners, also. The evidence shows that among the trees on the strip in question are telephone or telegraph poles, which one witness says are usually placed in public streets; and there is no claim that the consent of appellants was obtained in order that the poles be placed there.

May 6, 1903, the Improvement Company granted to the United States of America what is denominated an easement. This was recorded in May, 1915. It names the consideration of one dollar, and recites that the grantor grants unto the United States of America, "for the use of the public forever, the right to construct and maintain a harbor of refuge in

Rockingham Slough, adjoining the land owned by said Improvement Company, to tie floating crafts to the shore, and to have convenient access from the shore to the floating craft, subject to such proper regulations as city or town authority may enact." Appellants suggest that this is only an easement, and that they have a right to convey, subject to the easement. Appellees, in answer to this, say that the grant is perpetual, and that appellants do not claim otherwise; and appellees argue that this instrument, of itself, amounts to a dedication. They point out, too, that the grant provides that it is subject only to such proper regulations as may be imposed by the town, and that the defendants are claiming the right to impose the regulations, and to keep the public away from the river. There may be other circumstances in the record which bear upon the question of dedication, and we shall not take up or determine separately the several propositions before suggested. We have not attempted to set out the evidence to any considerable extent, but have only culled therefrom certain parts thereof, bearing upon the different propositions. There is a conflict at some points.

There was evidence justifying the trial court in its finding that the Improvement Company exhibited to plaintiff Schick plats on which no land was shown to exist between the river and the highway, and that Schick depended thereon. In view of our holding on the other propositions, we deem it unnecessary to discuss this one.

Considering the entire record, we are satisfied that the equities are with the plaintiffs, and that the trial court rightly decided the issue.—*Affirmed.*

LADD, C. J., EVANS and STEVENS, JJ., concur.